The Appellate Court of Illinois is reconvened. Thank you, Mr. Cooper. Mr. Moore, you may be seated. Our last case this morning is case number 416-0443, Aucar v. Carle. For the appellant, we have William Graham. And for the affiliate, Kyle Peterson. Good morning, Your Honors, and may it please the Court, my name is William Graham, appearing on behalf of the plaintiff appellant, John Aucar. We are before the Court this morning on, due to the trial court's grant of a 304 motion, finding that there was no just reason to delay the appeal of count number 1, which pertains to the 2007 contract. I understand that the Court is fully aware of the facts of the case, and I'll skip a recitation of the facts unless the Court wishes one.  Your Honors, the plaintiff takes the position that the trial court erred in four ways. It issued a contradictory holding, it erred in failing to view the contract in question in the totality of its terms, and it failed to apply the covenants of good faith and fair dealing, and it erred in finding that there were insufficient damages at issue. As the Court is aware, the Court cannot glean the intent of the parties from terms that are absent from a contract. Instead, it is charged with the duty to interpret the contract with the terms that exist. That's pursuant to air safety versus teacher realty court. In this case, the trial court did precisely that. It relied upon the fact that there is no statement of duty in Section 2 to find that there was no duty to consider the plaintiff for shareholder status. However, to reach that conclusion, the Court had to first ignore the title of the document, which was pre-associate contract. It had to ignore the recitals, which specifically stated that it was the desire of the physician to engage in certain duties and to be considered for election to shareholder status. And it had to ignore Section 4.1, which specifically stated that there was a date certain after the two-year probationary period, there was a date certain that the plaintiff physician was scheduled to be reviewed for shareholder status. In particular, incorporating the bylaws, which it specifically says are incorporated, it would make the third Monday in January 2010 to be the date when he should have been considered. The Court ignored all of those provisions in the actual contract and instead relied upon the absence of a duty stated in Section 2 to find that there was no duty to review the plaintiff for shareholder status. In addition, the opinion itself contains contradictory holdings. The Court first makes the factual finding that, quote, his eligibility for shareholder status is to be considered, end quote. And then a few lines later makes the legal holding that the 2007 agreement is unambiguous and that it does not require defendants to be considered for shareholder status. Defendants to consider plaintiff for shareholder status, rather. Obviously, these are contradictory holdings. It's the plaintiff of balance position that they constitute plain error. Well, what's our standard of review? Standard of review, Your Honor? Yeah. For the dismissal, de novo. Okay. What's the relevance of your argument, then, about why the trafficker did this or that or the other thing? Well, you're right, Your Honor. It is up to this Court to review the evidence and to find accordingly. I'm just giving the Court background that the Court below made contradictory holdings and thus its opinion may be suspect. Moving on to the plaintiff of balance second argument, it's the plaintiff of balance position that because the Court failed to view the contract in its totality, that it erred in dismissing the claim. The Court is aware that meaning and effect must be given to all parts of the contract so that no part is rendered meaningless or surplusage. That's from Martindale v. Lakeshore and Holman Auto Insurance v. Shirella. Let me ask you a question. Your biggest hurdle seems to be the issue of damages. Would you agree that even though your client alleges that he was imminently qualified to be considered and would have been made an associate or whatever it's called, you agree that that was within their discretion, that they did not have to make him one? I agree, Your Honor, that the contract states that they had sole discretion. In the recitals, it does say that. However, the case law is that when there is sole discretion granted in the contract, when there is broad discretion granted in the contract, that is precisely the time when you apply the covenants of good faith and fair dealing. And if you were to apply the covenants of good faith and fair dealing to the situation where they could not act inconsistently with the understanding of both parties at the time of contracting, there would be no way for the defendants to fail to consider the plaintiff physician for shareholder status. Fail to consider or make him one? They failed to consider him. So they didn't even go to the next step of making him one. My question is, if they didn't make him one, would he have any recourse? If they didn't make him, if they had followed their contractual duty and had considered him and had made, you know, after having considered all of the evidence that he put forward and then in their judgment, they chose not to make him one, no, he would have no damages. However, that's not the case here. Well, aren't we speculating, I mean, aren't you speculating? I mean, we don't know if they would have made him one. And so, let's say they didn't go through the process that they should have gone through. Yes. But then how can you prove damages when there is no guarantee that he would have been made one? I mean, your damages are premised upon him losing out, selling the shares. That's correct. So isn't that, isn't there a gap there? I don't believe so, Your Honor. Your Honor, I think the gap here is that they had an obligation to follow the contract. They didn't follow the contract and he lost out on his opportunity. But he has to prove damages. He does have to prove damages. And he can prove that he had the qualifications that if they had given him a just hearing, if they had followed their good faith duty, that he would have been granted shareholder status. I thought you said he could have been turned down and that would have been the end of it. I said he could have been turned down and that would have been the end of it if they had evaluated him. Yeah, well, let's assume that they said, okay, we're going to evaluate you. They did so and then they turned him down. If they had given him a fair hearing, that would have been fine, Your Honor. But they didn't. They denied him the very opportunity to make his case. You're arguing that he has an opportunity, that you have a cause of action because he was deprived of an opportunity to get damages that he might have gotten, the damages being awarded the shareholder status.  I am saying that, Your Honor. Well, but is that beyond just speculative? Don't you have to have something more definitive than that to ask for? In the plaintiff's position, no, Your Honor. The fact that he earned the right to be evaluated, the contract said he should have been evaluated, and that the defendants chose not to in their own self-interest. So essentially you're saying there's a cause of action for denial of the right to be evaluated. He had the right to be evaluated and they chose not to. Yes, and I'm saying his damages flow directly from that. Not the right to be awarded shareholder status, but to be evaluated. Exactly, Your Honor. Is there any precedent for something like this? Is this kind of like the right to be able to ask for something? No, Your Honor. He contracted for this right. It's not that he's asking for it because he hasn't earned it. He earned the right. They said that he would be, and then they pulled the rug out from underneath him and said that he couldn't be. So are we dealing with a situation where we would have to say, you're right, they breached the contract, but unfortunately you can't demonstrate damages? I hope the court does not make that holding. It is the appellant's view that damages do flow directly from that denial. That we can make the case that if they had given us a good faith hearing, that based upon the physician's credentials and everything that he had done in that two years, including setting up the intern program and overseeing others, that he would have been granted it if they had been open-minded and not thought of their own self-interest, but rather applied the criteria that is generally applied. Sole discretion then does not mean sole discretion. That's really what you're arguing. I'm arguing that in all contracts where the applied covenants apply, and that's all contracts where it hasn't been disclaimed, and that's this contract. In all contracts where it hasn't been disclaimed, that sole discretion is interpreted through the lens of the good faith obligation. Right? And so in this case... So you're arguing that sole discretion doesn't mean sole discretion, it sounds like to me. Sole discretion has been interpreted in other cases as needing to be interpreted. And how it's interpreted is you have to apply it as the parties intended when the contract is first made. You can't act inconsistently with the party's intentions. And the party's intentions, as evidenced through the recitals and Section 4.1, clearly intended there to be consideration. So the remaining people of the Carroll board decided it's not in our best interest to award Dr. O'Carr shareholder status. That would be improper. It would be improper if they had not evaluated him and made that determination based on a good faith. Yeah, he's an okay guy, but it's not in our interest. No, you're right, Your Honor. If they just made the claim that it's not in our interest, that would equate to opportunism. That would be acting against both parties and their expectations. But that raises the question of Justice Turner. The language talks about sole discretion. Does that mean they couldn't be considering whether it's in their interest as well? I don't believe that was the expectation of the parties, that they were going to act in their sole interest. The language, I mean, when you say sole discretion, doesn't that mean the deciding agency can consider anything and everything? They may be able to consider their interest, but if they were acting in a good faith way, they wouldn't be motivated by their self-interest. They would be motivated by what both parties expected. I'm just, it seems to me when you're writing up a contract this way, if that's what you're intending, that it's going to be a good faith evaluation based upon Dr. Okar's history of work up to that point. That's what the contract should say. And then if it turned out that that was something short of that, he'd have cause of action to say, you didn't live up to the terms of the contract. Your Honor, I would say it would be even easier if they had disclaimed the covenants of good faith and fair dealing, which they were perfectly permitted to do. But they didn't do that. They included those implied covenants by not disclaiming them. And because they are part of the contract, they should be applied as they're part of the contract. So that covenant that you say is present trumps the language of it's within our sole discretion? No, because it interprets that contract. It doesn't change that contractual provision. It interprets that contractual provision. So it means we'll exercise our sole discretion and do so within the confines of the good faith interpretation of the contract. The defendant's argument is that the plaintiffs are seeking to add provisions to the contract. And that's not true. There's a case law that says that's not permitted, and I can see that that case law exists. The plaintiffs aren't trying to add any provisions to the contract. They are trying to interpret the terms that exist. And if they're interpreting correctly the term of sole discretion included in the recital, they should be applying the good faith meaning to that. Thank you. Just to put some legal backbone behind what I've been discussing. The covenants exist in every contract, pursuant to Northern Trust versus Roman V South Michigan Associates. The purpose is to ensure that the parties don't take advantage of each other in a way that's not anticipated. RBS Citizens National. The covenants are necessary when the contract grants an exercise of broad discretion, just as what occurred in this case. That's pursuant to Woodstock LLC versus City of Woodstock. And discretion must be exercised so that it is with proper motive, not arbitrary, capricious, or in a manner inconsistent with the expectation of the parties. That's for Midwest Energy Consultants versus Covenant Home. In those cases, they weren't seeking to add language to the contract. They were simply trying to give proper meaning to the broad discretion that's included in the contract. Regarding the, I think we have discussed the good faith and fair dealing aspect of it, unless you want me to continue on that. Regarding the holding that the damages were inadequately pled when speaking to Justice White's concerns, the contract, if a contract is breached, the party is entitled to be made in the same position that it would have been if it had not been breached. That's Wilson versus DeCoste-Ola. Did you argue in your brief in the trial court that but for the clinic's breach, plaintiff would have been approved for shareholder status at the January 2010 meeting? I released that in the complaint, Your Honor. Yes. And is that a necessary affirmation, or it's a stated cause of action? I don't know if it's a necessary affirmation, Your Honor. That is something probably for the courts to decide. But I would say that it was made in this case, and it does support the plaintiff's view. What does the contract say about the evaluation for shareholder status? What does it say? It includes in the recitals the fact that the physician will give certain duties and expects to be evaluated for election status. When eligible. And then in section 4.1, although the language is not pristine or clear, but that's not my client's doing, it's the defendant's contract. But the contract in essence states that after the probationary period of two years, that the physician would be evaluated at the first clinic shareholder meeting and incorporating the bylaws, that that would have been the third Monday in January 2010. That he should have been evaluated for shareholder status. Is there any further discussion within the contract regarding that consideration for shareholder status? It appears in those two sections, Your Honor. And the title of the document is pre-associate agreement and I think the correct interpretation of that phrase would imply that because this agreement is prior to that status, that that status is being sought. Associate status, that is. So I would say that in three places in the contract that it makes reference to evaluation for shareholder status. I would also say that if the contract was ambiguous regarding shareholder status and because those elements are included in the contract, the court should have permitted parole evidence to explain the terms if the court believed that it was subject to multiple interpretations. Mr. Graham, you're out of time, but you will have rebuttal. Thank you, Your Honor. I appreciate it. Thank you. Good morning, Your Honors. May it please the court. Kyle Peterson for Defendant Appelese and let me know if you can't hear me. I'm fighting a cold and I've been losing my voice, so I'll try to keep it up for you. I'm here today on behalf of the Defendant's Carl Foundation Hospital and the Carl Healthcare Inc., or the clinic, as it's referred to in our papers. We think this is a pretty simple case before you today that boils down to whether the 2007 employment agreement between Dr. O'Car and the Carl Clinic required that the clinic consider him for shareholder status by a date certain, that date that plaintiff is suggesting is January of 2010. And if they were required to consider him at that point, are there any damages that would flow from the failure to consider that would be sufficient to state a claim? We think that the contract makes clear when read in its totality that there is no obligation to consider him for shareholder status by any date certain and that there could be no damages in any event by a failure to simply consider him. With respect to the duty of good faith and fair dealing, we also believe that even if that lens is applied to the clinic's exercise of discretion, there can be no facts that would establish bad faith here or that the... Was he treated fairly? Yes, he was treated exactly the same as all other pre-associates were treated. And the clinic shareholders did not act in bad faith arbitrarily or capriciously when they made the decision that it was in the fiduciary, their fiduciary duties to the clinic and each other, not to admit any new shareholders prior to a merger that was coming up. Well, maybe they were all treated unfairly. Because Justice Steinman asked you if he was, and you simply said he was treated like everyone else. I would say that he was treated like everybody else, which to me takes it outside of the realm arbitrarily or capriciously. The shareholders considered their obligations to the organization and to each other as they were looking at a new business development and acted in those interests. There's nothing in the agreement. There's nothing in the duty of good faith and fair... The 2007 contract that he signs says that scheduled, at the scheduled hearing two years after he serves, starting in January 2008, his eligibility for a clinic's shareholder status is scheduled to be considered. Respectfully, Your Honor, I disagree that that's what it says. It says that Section 4.1, which you were referring to, I believe, is a provision in the contract that refers to the term of the contract and then how the contract is going to be terminated in 4.2. What it actually says is that the full-time employment begins in January 28th and will continue for a period of two years, plus an additional time not to exceed 60 days beyond the date at the first regularly scheduled clinic shareholder meeting at which his eligibility is considered. It doesn't say his eligibility is going to be considered at any particular meeting. It just says he gets to keep working for 60 days after whichever regularly scheduled meeting his shareholder candidacy is considered. There's nothing in this agreement... It's scheduled to be considered. At which it is scheduled to be considered. What does that mean? It means that you can work for us for at least two years. That's the minimum period of time it would take in order to be eligible for a shareholder status under the bylaws, which are incorporated into the agreement. Two years is the minimum. There's nothing in the bylaws that says we have to put you up at this first meeting after you hit your two-year anniversary. It just says, whenever we consider you, whichever meeting, and the bylaws say that shareholder candidacy has to be considered at a regularly scheduled meeting as opposed to a special meeting. I believe that's what it's referring to. At whichever regularly scheduled meeting we consider you, you've got 60 days. Either we elect you and you've got 60 days to make your contribution, become a partner, shareholder, associate of the organization, or you've got 60 days to negotiate a new employment agreement or find another opportunity is all that that says. There's nothing in here that says on your two-year anniversary, you will be considered. I just don't see that language. It says, I think the phrase not to exceed 60 days following the day of the first regular clinic shareholder is a modifier which adds nothing to the ultimate language here. It talks about after two years of employment, there will be a meeting at which the physician's eligibility for clinic shareholder status is scheduled to be considered. I disagree that that's what that paragraph means. I think that it says you get 60 days from whatever meeting it is considered, at which it is considered. It doesn't say, I don't believe that the at which is modifying the first regularly scheduled meeting at which it's considered. It's not, it will be considered. 60 days following the date of the first regularly scheduled clinic shareholder meeting. Well, to the extent there's this ambiguity, and it sounds like a bunch of gibberish, Carl wrote it. It's an adhesion contract. Why shouldn't this ambiguity be held against Carl and say, since you chose not to use the King's English and put it in this gibberish instead, we're going to hold that it means what Dr. Okar says. Well, I don't think that if it's ambiguous, Dr. Okar gets to unilaterally decide what it says. But I also think that ultimately it doesn't matter, because all that, if you accept Dr. Okar's interpretation, it only gives him a right to be considered. Okay, so let's assume that's what it says, shall be considered as required by the clinic's bylaws to see if he's going to then have shareholder status. Was he considered for that purpose? No, in 2009, Carl made the decision that it was not going to elect any new shareholders because it was going to enter into a merger. So then he lost the opportunity for his shareholder status to be considered after his two years? He didn't. He entered into a new employment agreement in February the following year. In February of what? In February of 2010. So... So in January of 2010, there was a merger. He knew he wasn't going to be considered at that point. He knew in 2009 he wasn't going to be considered. And he negotiated a new agreement with the merged organization in February of 2010. What did it say? It said that he was going to be an employee of the Carl Foundation Hospital. And he worked under that agreement for some time prior to his termination. Are you claiming that he failed to bring this action in a timely fashion? No, that's not our claim. Our claim is that there was no... Our position is that the contract does not say what he says it says. The recital, for example... Let's assume it does. Then what about this later action that... Was that Trumpet? I'm sorry, which later action? The 2009 action that you referred to. Let's assume for purposes of argument that this language said that he had a right under this agreement to be considered for shareholder status after two years regarding his commencement of his work. Then the question is that the other matters you referred to, Trump or under this agreement, null and void, I don't know that you could say it renders the agreement null and void, but it certainly informed the... I mean, it's a difficult question. I don't think it renders the agreement null and void. I no longer have a... But it's hard for me to answer the question because that's really not what the contract says and that's not what happened. Humor me, counsel. It says that. Now I want to know what the subsequent action of Carl did to deprive him of that opportunity. Before the two-year anniversary mark, Carl made the decision it was not going to elect any new shareholders and it was instead... That sounds unilateral to me. It is unilateral and the agreement says the sole discretion... Counsel, see, the rules are when I speak, you stop. I'm sorry, your honor. So that unilateral action, how does that affect the contract that he signed in 2007? I think it's perfectly acceptable under the terms of the contract. The contract provides Carl the sole discretion. You start at the recital. The recital says Dr. O'Carl wants to be a partner here and Carl has the sole discretion to make that decision, which is what the recital says. The recital, to quote, says, whereas physician desires to assume the duties and obligations of a clinic pre-associate physician and to be considered in the clinic sole discretion for election as a clinic associate physician. I'm thinking about a similar situation. Tell me if it applies and why it doesn't. We on this court have often spoken about the discretion afforded to trial courts. Trial courts have discretion. But if the record shows that a trial judge says, I have no discretion, then that's a different situation. Then we are not deferential to the trial court's action. It seems to me that if the Carl Clinic is the policymaking body here, they have the sole discretion to decide who shall be accepted into shareholder status in 2010, according to this contract. But in 2009, they decide no one is going to be accepted hereafter into shareholder status. Then they are no longer exercising their sole discretion. They've eliminated it. Why isn't that applicable? I would disagree that they're no longer exercising their sole discretion. I think they're continuously exercising their sole discretion. We're not going to make you partner. We're not going to make you partner. We're not going to make anybody else partner. And I think that is an exercise of their discretion. It doesn't sound like a discretionary call as to whether Dr. Okar shall be made a partner, does it? I think it does, Your Honor. I think they had sole discretion, whether it was based on his qualifications or it's not in the interest of the business to bring on another partner. They had sole discretion to make that decision at any point in time. The earliest point that Dr. Okar could even have some expectation of being considered was after a two-year anniversary. So, assuming I'm correct in reading this as saying he's got a right to be considered for shareholder status in 2010, within the sole discretion of Carl, in 2009 Carl says, forget about that. No one, including Dr. Okar in this contract, is going to be considered henceforth for shareholder status because we have so decided and we want to keep all this money that's coming in for ourselves. That's it. I believe that is it, Your Honor. And that's consistent with the good faith and fair dealing under the contract. Is that correct, Dr. Okarsak? Yes, I believe it is. To the extent the implied duty of good faith and fair dealing applies to their sole discretion, I believe that they are entitled as shareholders to exercise that discretion in the best business interests of the shareholders and the organization. When they say no one is going to be henceforth admitted, is that the exercise of discretion? Yes. Absolutely. Doesn't discretion connote that you're weighing considerations? Isn't that what the term means? Yes. Was there some weighing of considerations with regard to Dr. Okar? There was a consideration that if we bring Dr. Okar or anybody else in, that impacts our business interests as shareholders of the organization. And there's nothing in this contract that says we have to consider Dr. Okar based on his performance, on his eligibility as a doctor, on his medical background. There's nothing in here that guarantees that. It's their sole discretion. And if they decide that the only criteria we want to use is what's in the best business interests of the shareholders in the clinic, that's within the realm of their discretion. And I believe that's a good faith basis for opting not. Can you think of an example of what would be bad faith under those circumstances? I can't. Perhaps Mr. Graham could think of something. I'm not sure what would be bad. I think sole discretion. You know, in other contexts I've seen bad faith in like a commission concept and we terminate somebody to avoid paying them a commission they've already earned. Let me phrase it this way. Is there no value to a contractual provision that says you have the right to be considered for X? I believe there is no value and I don't believe that that's what this contract provides. Assuming it did, there's no value to saying you have the right to be considered for X. I think that's right. I think there are no damages that could follow from the failure to consider. If there were damages that could follow that says there's value in being able to, isn't it kind of like a value for an option to purchase property? Perhaps, but because it's couched in the context of sole discretion, to me it seems as though it's an illusory promise. Illusory promises aren't much part of contract law, are they? Kind of by definition, if it's an illusory promise it really doesn't fit. Exactly, Your Honor, but that gets me back to our position that there is no promise in this contract that he would be considered by any date certain. It's a strange proposition for Carl to be arguing that we wrote an illusory promise into our contract. Well, that's not our position, Your Honor. You've asked me to assume that promise is in there. There's no further questions. Thank you. I don't see any. Thank you. Any rebuttal? Yes, Your Honor. I'll make it very brief. Let me ask you, Counsel, the question I asked the opposing counsel, Ms. Peterson, is there some authority, and do you cite it, and I apologize if I only call for the brief, specific authority for a right, contractual right, the value to be considered for an opportunity, such as assuming the contract says you have a right to be considered for shareholder status. Is there some case law that would support the claim that there's value to that? I don't have a specific case on that specific. Well, it seems to me that that may be your best argument, but if you don't, you're going to lose. I think that. Which is why I'm anxious. Where is that? Well, I think that the larger case law that says that you are entitled to be put in the same position as you would have been before the breach, I think is applicable, Your Honor. Wilson v. DeCasola. I also think that this would be lost profits. He had the ability on one day to have profits, but then when they made the unilateral decision that they weren't going to consider anybody else, that opportunity was taken away. And as I think that the court is suggesting, that certainly had value. That certainly had a value to the plaintiff. He had the opportunity, and he would have presented his evidence that he was entitled to shareholder status, but he was denied that opportunity. I think that this court... Well, what's troubling here is, as I mentioned, it's assuming he might have been denied had there been a good faith hearing. Going back to the whole business of discretion trial courts, it's obvious that no hearing was held or going to be held. The court decided not to do it at all. And so I'm wondering whether there's value that he can argue in having a hearing where he could even be considered. I'll follow your analogy, Your Honor. Certainly, if the court had discretion, and it simply chose without reading the briefs to deny a claim, that would definitely be prejudicial to the parties, right? The party that was seeking to not have the motion granted against them. If it was simply an act without discretion and a denial, that would be prejudicial. And that would certainly have value to that person. In the same way, this denial of the opportunity certainly had value to the plaintiff. I would also add, Your Honor, that opportunism is not a valid grounds for the denial of good faith. In fact, the cases that I mentioned, including the LaSalle Bank national case, specifically say that opportunism does not trump good faith. With that, Your Honor, I will conclude. Okay. Thanks to both of you. The case is submitted. The court is in recess until after lunch.